UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:18-CV-00100-GNS-RSE

ROBERT C. WILLIAMSON, JR.,
in his capacity as curator of the Estate
of Larry D. Henning a missing individual,
in Jefferson County, Kentucky, Probate Court                               PLAINTIFF

v.

ANA MARIE LUNAR, et al.                                                   DEFENDANTS

## MEMORANDUM OPINION AND ORDER

This matter is before the Court on Plaintiff's Motion for Summary Judgment (DN 98), Plaintiff's Motion for Leave to Exceed Page Limit (DN 99), Plaintiff's Motion for Leave to Enlarge Time to File Exhibits (DN 100), Plaintiff's Motion for Leave to File Exhibits (DN 102), and Plaintiff's Motion for Leave to file Amended Memorandum in Support of Summary Judgment (DN 103). The motions have been fully briefed and are ripe for decision. For the reasons stated below, Plaintiff's Motion for Summary Judgment is **GRANTED IN PART** and **DENIED IN PART**, and the remaining unopposed motions are **GRANTED**.

### I.   BACKGROUND

This action is brought by Robert C. Williamson, Jr. ("Plaintiff") who was appointed as Curator of the Estate of Larry David Henning ("Henning") on August 12, 2014. (Compl. ¶ 1, DN 1). Defendants include Ana Marie Lunar ("Lunar"), American Maritime Officers Plans ("AMOP"), Life Insurance of Company of North America, which is a subsidiary of CIGNA Corporation ("CIGNA"), and any unknown contingent heirs of Henning. (Compl. ¶¶ 2-5).

Henning was reportedly sailing on May 6, 2013, from Charleston, South Carolina, to Aruba on a sports fishing vessel. (Compl. Ex. A, at 2). After he failed to arrive in Aruba, a United States Coast Guard ("USCG") search discovered only lifejackets and debris from the vessel, which was reported lost as sea. (Compl. Ex. A, at 2). The USCG conducted an extensive search over the next three days, but unfortunately was unable to locate Henning or any remains. (Compl. Ex. A, at 2, DN 1-2). Henning was declared missing by the USCG on May 6, 2013. (Compl. Ex. A, at 2).

Lunar claims she was married to Henning before his death and is therefore entitled to benefit from his estate. (Def.'s Answer ¶ 7, DN 20). Plaintiff has asked the Court to grant summary judgment on a variety of claims: (1) a claim for declaratory judgment that Henning died on February 23, 2013; (2) a claim for declaratory judgment that Henning was a resident of Kentucky at the time of his death; (3) a claim for declaratory judgment that Henning and Lunar's purported marriage is invalid; (4) tortious interference; (5) fraud; (6) damages under KRS 446.070; (7) a claim for declaratory judgment of rights and obligations of AMOP; and (8) a claim for declaratory judgment of rights and obligations of CIGNA. (Pl.'s Am. Mem. Supp. Mot. Summ. J. 35-57, DN 103-1). Plaintiff has also made numerous unopposed motions relating to the filing of exhibits and an amended memorandum in support of its summary judgment motions. (Pl.'s Mot. Leave Exceed Page Limit (DN 99); Pl.'s Mot. Leave Enlarge Time (DN 100); Pl.'s Mot. Leave File Exs. (DN 102); Pl.'s Mot. Leave File Am. Mem. (DN 103)). The motions are ripe for adjudication.

## II.     STANDARD OF REVIEW

In determining whether Plaintiff is entitled to summary judgment, the Court must decide whether there is any genuine issue of material fact left for the trier of fact. *See* Fed. R. Civ. P. 56(a). Initially, the moving party bears the burden of demonstrating the absence of a genuine issue

of material fact. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). If the moving party meets its burden, then the burden is on the non-moving to provide specific evidence of a genuine issue of material fact. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986).

In making this determination the Court must review the evidence cited by the parties, but it may also consider other material in the record such as depositions or documents. Fed. R. Civ. P. 56(c). The Court must consider the evidence in the light most favorable to the non-moving party. *Tompkins v. Crown Corr, Inc.*, 726 F.3d 830, 837 (6th Cir. 2013). The non-moving party must do more than provide a "scintilla of evidence" in support of its position; it must present sufficient evidence from which a jury could reasonably decide the issue in its favor. *Anderson*, 477 U.S. at 252.

It is not required that the non-moving party produce evidence that would be admissible at the trial stage. *See Celotex Corp.*, 477 U.S. at 323 ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment."). The non-moving party can offer evidence such as affidavits, declarations, documents, or electronically stored information to show that it will be able to provide admissible evidence at trial. *See id.* ("Rule 56(e) permits a proper summary judgment motion to be opposed by any of the kinds of evidentiary materials listed in Rule 56(c) . . . ."); Fed. R. Civ. P. 56(c)(1) ("A party asserting that a fact cannot be or is genuinely disputed must support the assertion by . . . showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse part cannot produce admissible evidence to support the fact.").

### III. DISCUSSION

### A. Plaintiff's Motion for Summary Judgment

Plaintiff moves for summary judgment on the Estate's claims and Lunar's crossclaim. In addressing this motion, the Court must consider whether it will exercise jurisdiction over Plaintiff's request for a declaratory judgment and if so, then address whether Plaintiff is entitled to summary judgment.

#### 1. *Declaratory Judgment*

As a threshold matter, courts must address whether to exercise their discretion asserting jurisdiction over actions brought pursuant to the Declaratory Judgment Act, 28 U.S.C. § 2201(a). *See Travelers Indem. Co. v. Bowling Green Prof'l Assocs., PLC*, 495 F.3d 266, 271 (6th Cir. 2007) (raising the issue, sua sponte, of whether to exercise jurisdiction over declaratory judgment action); *see also Byler v. Air Methods Corp.*, 823 F. App'x 356, 365 (6th Cir. 2020) ("A proper exercise of discretion under the Declaratory Judgment Act includes a 'reasoned analysis of whether issuing a declaration would be useful and fair.' We have also suggested that a failure to apply the *Grand Trunk* factors constitutes reversible error." (internal citation omitted) (citations omitted). Under the Declaratory Judgment Act, "any court of the United States, upon the filing of an appropriate pleading, may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). A court's exercise of jurisdiction under the Declaratory Judgment Act, however, is discretionary—not mandatory. *See Bituminous Cas. Corp. v. J & L Lumber Co.*, 373 F.3d 807, 812 (6th Cir. 2004) (citing *Brillhart v. Excess Ins. Co. of Am.*, 316 U.S. 491, 494 (1942)).

When deciding if a declaratory ruling is appropriate a court should consider whether the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and

whether it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding. *See Grand Trunk W.R. Co. v. Consol. R. Corp.*, 746 F.2d 323, 326 (6th Cir. 1984). The Sixth Circuit has outlined the following five factors to analyze when determining whether a district court should exercise jurisdiction over a request for a declaratory judgment:

> (1) whether the declaratory action would settle the controversy; (2) whether the declaratory action would serve a useful purpose in clarifying the legal relations in issue; (3) whether the declaratory remedy is being used merely for the purpose of "procedural fencing" or "to provide an arena for a race for res judicata;" (4) whether the use of a declaratory action would increase friction between our federal and state courts and improperly encroach upon state jurisdiction; and (5) whether there is an alternative remedy which is better or more effective.

*Id.* (citation omitted); *see also Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 564 (6th Cir. 2008). The *Grand Trunk* factors embody three main principles: efficiency, fairness, and federalism. *See W. World Ins. Co. v. Hoey*, 773 F.3d 755, 759 (6th Cir. 2014) (citation omitted).

This Court considers the first two factors together. "[I]t is almost always the case that if a declaratory judgment will settle the controversy, then it will clarify the legal relations in issue." *Flowers*, 513 F.3d at 555 (citations omitted). "[A] declaratory judgment is proper if it will only have to decide purely legal questions or engage in fact-finding that does not affect the parties in the underlying action." *Argonaut-Midwest Ins. Co. v. Johnson*, No. 3:14-CV-00395-TBR, 2014 WL 6804284, at *2 (W.D. Ky. Dec. 2, 2014) (internal quotation marks omitted) (citations omitted).

Plaintiff concedes that there is a "related case" proceeding in Jefferson (Kentucky) District Court. (Pl.'s Am. Mem. Supp. Mot. Summ. J. 3). However, this Court's analysis would not affect the parties in the underlying action. The question here is whether Lunar and Henning were legally married prior to his death. There is nothing before the Court to indicate that Lunar has appeared in Jefferson District Court to argue she is entitled to the contested benefits. (*See* Pl.'s Am. Mem. Supp. Mot. Summ. J. 6). The Jefferson District Court would not have jurisdiction to rule on this

5

matter because it is an adversarial proceeding.  *See* KRS § 24A.120 (District Court shall have exclusive jurisdiction in:  (2) Matters involving probate, *except matters contested in an adversary proceeding*.  Such adversary proceeding shall be filed in Circuit Court in accordance with the Kentucky Rules of Civil Procedure . . . ."  (emphasis added)).

This Court's ruling on the controversy before it does not require fact-finding that would impact the Jefferson District Court action.  This Court's ruling would also settle the controversy and clarify the legal relations.  Therefore, these two factors weigh in favor of exercising jurisdiction.

The third factor considers "whether the use of the declaratory judgment action is motivated by 'procedural fencing' or [is] likely to create a race for *res judicata*."  *Flowers*, 513 F.3d at 558.  The Sixth Circuit explained that this analysis is "meant to preclude jurisdiction for 'declaratory plaintiffs who file their suits mere days or weeks before the coercive suits filed by a 'natural plaintiff' and who seem to have done so for the purpose of acquiring a favorable forum.'"  *Id.* (quoting *AmSouth Bank v. Dale*, 386 F.3d 763, 788 (6th Cir. 2004)).  Where there is no direct evidence in the record to suggest a declaratory action was motivated by such "procedural fencing," courts "are reluctant to impute an improper motive to a plaintiff . . . ." *Id.* (citations omitted).  As the Sixth Circuit has noted, "[a] district court should not deny jurisdiction to a plaintiff who has not 'done any more than choose the jurisdiction of a federal rather than a state court, a choice given by Congress.'"  *Flowers*, 513 F.3d at 558 (quoting *State Farm Fire & Cas. Co. v. Odom*, 799 F.2d 247, 250 n.1 (6th Cir. 1986)).

There is no direct evidence of procedural fencing here.  Therefore, the third factor "is considered to be neutral with respect to the determination of whether to exercise jurisdiction."

6

*Everett Cash Mut. Ins. Co. v. Mann*, No. 1:17-CV-00201-GNS, 2019 WL 267734, at *3 (W.D. Ky. Jan. 18, 2019).

Fourth, the Court must consider "whether accepting jurisdiction would increase friction between federal and state courts." *Flowers*, 513 F.3d at 559. "[T]he mere existence of a state court proceeding is not determinative of improper federal encroachment upon state jurisdiction." *Allstate Ins. Co. v. Green*, 825 F.2d 1061, 1067 (6th Cir. 1987) (abrogated on other grounds). There are three sub-factors the Court must consider:

> (1) whether the underlying factual issues are important to an informed resolution of the case;
> (2) whether the state trial court is in a better position to evaluate those factual issues than is the federal court; and
> (3) whether there is a close nexus between the underlying factual and legal issues and state law and/or public policy, or whether federal common law or statutory law dictates a resolution of the declaratory judgment action.

*Scottsdale Ins. Co. v. Roumph*, 211 F.3d 964, 968 (6th Cir. 2000).

"The first of these sub-factors focuses on whether the state court's resolution of the factual issues in the case is necessary for the district court's resolution of the declaratory judgment action." *Flowers*, 513 F.3d at 560. "[S]ometimes resolution of the issue raised in federal court will require making factual findings that might conflict with similar findings made by the state court. *Id.* (citation omitted).

As stated above, this Court's analysis is focused on the adversarial proceeding pertaining to whether Lunar and Henning were legally married and whether Lunar is entitled to benefit from Henning's estate. The Jefferson District Court does not have jurisdiction over that dispute, which could be pursued only in Jefferson Circuit Court. *See* KRS 24A.120. Therefore, the Jefferson District Court's analysis of factual issues would not impact this Court's declaratory judgment.

The second sub-factor "focuses on which court, federal or state, is in a better position to resolve the issues in the declaratory action." *Flowers*, 513 F.3d at 560. Again, the Jefferson District Court does not have jurisdiction over the present dispute, which could only be prosecuted in Jefferson Circuit Court. *See* KRS 24A.120. Absent a pending case in the state circuit court, there appears to be no potential conflict between findings in this action and the state district court action.

"The final sub-factor requires the court to determine whether the issue in the federal action implicates important state policies and therefore would be more appropriate for the state court to address." *Secura Ins. Co. v. Gray Constr., Inc.*, 661 F. Supp. 2d 721, 730 (W.D. Ky. 2009). At first glance, this case seems to present a probate matter which could only be resolved in state court. *See Marshall v. Marshall*, 547 U.S. 293, 298 (2006) ("Among longstanding limitations on federal jurisdiction otherwise properly exercised are the so-called 'domestic relations' and 'probate' exceptions."). However, Lunar has not appeared in front of the state court and the question of the purported marriage exists with respect to a dispute over life insurance proceeds. *See Northland Ins. Co. v. Stewart Title Guar. Co.*, 327 F.3d 448, 454 (6th Cir. 2003) ("Northland was not a party to the state court action, and neither the scope of insurance coverage nor the obligation to defend was before the state court. Thus, a decision by the district court on these issues would not offend principles of comity."). Accordingly, the exercise of jurisdiction here does not seem to offend important state policies.

All three sub-factors weigh in favor of the Court exercising jurisdiction. As a result, the fourth factor weighs in favor of the Court exercising jurisdiction.

Lastly, this Court must consider whether there is a better alternative remedy. The Sixth Circuit has stated that the district court should "deny declaratory relief if an alternative remedy is

8

better or more effective." *Grand Trunk*, 746 F.2d at 326. "[R]ather than applying a general rule, our inquiry on this factor must be fact specific, involving consideration of the whole package of options available to the federal declaratory plaintiff." *Flowers*, 513 F.3d at 562.

Plaintiff's primary alternative appears to be bringing this action before the state circuit court. *See* KRS 24A.120. Alternatively, Plaintiff could submit to jurisdiction in one of the venues in Florida where Lunar has filed suit. (*See* Pl.'s Am. Mem. Supp. Mot. Summ. J. 6-7). Having to litigate the case in Florida would be costly and inconvenient for Plaintiff who resides in Kentucky. Refiling the case in a Kentucky circuit court after both parties have submitted their motions and responses would only unnecessarily require expending further judicial resources, which likewise seems unlikely to offer a more effective process. Therefore, this factor weighs in favor of exercising jurisdiction.

To summarize, the first two factors weigh in favor of exercising jurisdiction, the third factor is neutral, the fourth factor weighs in favor of exercising jurisdiction, and the fifth factor weighs in favor of exercising jurisdiction. Therefore, the Court chooses to exercise jurisdiction over the declaratory judgment action.

    **2.**    *Merits*

Because the Court has determined that it will exercise jurisdiction over this matter, the Court will consider whether Plaintiff is entitled to summary judgment.

    **a.**    **Henning's Death**

It is undisputed that Henning disappeared at sea on or about February 24, 2013. Lunar does not appear to refute his death in her response, referring to herself as a widow whose husband lost his life. (Def.'s Resp. Pl.'s Mot. Summ. J. 4, DN 125 [hereinafter Lunar's Resp.]). In her Answer, Lunar denies that Henning is dead. (Def.'s Answer ¶ 5). However, Lunar has not

9

contested this issue in her response to Plaintiff's Motion for Summary Judgment. No evidence has been offered or disputed that Henning perished in the boating accident on or about February 24, 2013. There is no dispute left for the jury, therefore the Court grants summary judgment in favor of Plaintiff as to this issue.

### b. Henning's Residency

Plaintiff offers a variety of documents to support the proposition that Henning was a Kentucky resident, including, but not limited to: the deed to Henning's family home in Louisville, Kentucky; Henning's Kentucky driver's license issued November 17, 2011; the Florida Fish and Wildlife Conservation Commission's report listing his address in Louisville, Kentucky; Henning's Kentucky voter registration record; Plaintiff's affidavit stating that Henning received his mail at his home in Louisville; Henning's medical plan through AMOP listing his address in Louisville, Kentucky; his checking account with Chase Bank in Louisville; and Henning's Last Will and Testament stating his domicile was Kentucky. (Pl.'s Am. Mem. Supp. Mot. Summ. J. 35-38).

"[A] change in *legal* residence or domicile requires a physical act coupled with the intent to abandon the domicile previously established." *Hunter v. Mena*, 302 S.W.3d 93, 97-98 (Ky. 2010) (citing *Perry v. Motorists Mut. Ins. Co.*, 860 S.W.2d 762, 765 (Ky. 1993)). As a result, the analysis hinges on whether there is evidence of a physical act to support the finding that Henning intended to abandon his status as a Kentucky resident. *Id.* "[T]he burden of establishing a change of domicile is upon the one asserting it. *Id.* (citing *Hite's Adm'r v. Hite's Ex'r*, 97 S.W.2d 811, 813 (Ky. 1936)).

Lunar provides no evidence to dispute that Henning was a resident of Kentucky at the time of his death. Although Lunar states that "I already told you look for the address at the Florida Broward Driver License so that you can see that the address that appears is: 1830 SW 81st Ave

apt 4315, N. Lauderdale, Fl 33068", no evidence of a Florida driver's license has been presented.[1] (Lunar's Resp. 6).

Plaintiff having produced ample evidence supporting a ruling that Henning's domicile was Kentucky and Lunar having produced no proof to the contrary, Plaintiff is entitled to a declaration in his favor on this point. *See* Fed. R. Civ. P. 56(a).

### c. Henning and Lunar's Purported Marriage

There is a genuine dispute of material fact as to whether Henning and Lunar were legally married in Venezuela, therefore the Court denies summary judgment as to the existence of a marriage between Henning and Lunar. *See* Fed. R. Civ. P. 56(a).

Plaintiff argues that the purported marriage between Henning and Lunar on June 12, 2012, did not occur. (Pl.'s Am. Mem. Supp. Mot. Summ. J. 44). To support their argument Plaintiff points to:

> (1) the testimony of Attorney Rodolfo Ruiz that the marriage is not recorded in the Catia La Mar marital registry; (2) the numerous deficiencies in the marriage certificate identified by Mr. Ruiz; [and] (3) the testimony of PNC's Rule 30(b)(6) deponent Kent Billingsley concluding that Ms. Lunar was the person who presented three checks at PNC branches in Louisville in June 11 through 18, 2012, a conclusion reinforced by the fact that the presenter on one occasion produced Ms. Lunar's driver's license as identification.

(Pl.'s Am. Mem. Supp. Mot. Summ. J. 44). Additionally, Plaintiff argues that the pre-printed form Lunar offers as proof of a marriage certificate, purportedly dated December 6, 2012, was not used in the Catia La Mar registry until 2013. (Pl.'s Am. Mem. Supp. Mot. Summ. J. 7). However, in

---

[1] The only driver license in the record was offered by Plaintiff, and it is Lunar's Florida driver license. (Pl.'s Notice Filing Ex. 29, DN 106-13). That license is inconsequential because it does not support the proposition that Henning was living in Florida or that he intended to abandon his status as a Kentucky resident.

her response, Lunar repeatedly contends that she and Henning were married in Venezuela. Lunar has also provided a document that she claims is a photocopy of their marriage certificate. (Pl.'s Notice Filing Ex. 1, DN 104-2). *See Celotex Corp.*, 477 U.S. at 323 (it is not required that the photocopy would be admissible at trial).

In light of Lunar's statement and documentary evidence to support her position, a material dispute of fact exists as to whether Lunar and Henning were married. This precludes granting summary judgment on Plaintiff's claims and Lunar's cross claim as to this issue. *See* Fed. R. Civ. P. 56(a).

### d. Additional Claims Against Lunar

Plaintiff makes additional claims that are dependent on a determination of whether Lunar and Henning were married at the time of Henning's death. (*See* Pl.'s Mem. Supp. Mot. Summ. J. 18-21). Therefore, summary judgment is not appropriate as to Counts IV, V, and VI, as well.

First, Plaintiff asserts a claim for tortious interference with an inheritance interest or gift (Count IV). (Pl.'s Am. Mem. Supp. Mot. Summ. J. 45). Plaintiff defines the tort by quoting the Restatement (Second) of Torts § 774B (1979), which states: "One who by fraud, duress or other tortious means intentionally prevents another from receiving from a third person an inheritance or gift that he would otherwise have received is subject to liability to the other for loss of the inheritance or gift." (Pl.'s Am. Mem. Supp. Mot. Summ. J. 46 (internal citations omitted)). Plaintiff concedes that the tort has not been recognized by Kentucky courts, but insists with this set of facts the Kentucky would certainly recognize the tort. (*See* Pl.'s Am. Mem. Supp. Mot. Summ. J. 46-48).

Plaintiff asserts that Lunar, "acting with oppression, fraud and malice as defined in KRS § 411.184, among other things—submitted to the Curator and AMOP a fraudulent and wholly

deficient document purporting to be a Certificate of Marriage and testified under oath in this case that she is the widow of Mr. Henning . . . ." (Pl.'s Am. Mem. Supp. Mot. Summ. J. 48). Therefore, accepting Plaintiff's proposition that Kentucky would recognize this tort, the claim is predicated on a finding that Henning and Lunar were married. Having declined to rule in Plaintiff's favor regarding the existence of a valid marriage, summary judgment is denied also on Plaintiff's tortious interference claim.

Also, Plaintiff has also alleged that Lunar committed fraud (Count V). (Pl.'s Am. Mem. Supp. Mot. Summ. J. 48). Under Kentucky law, a claim of fraudulent misrepresentation must be based upon a "past or present material fact." *Flegles, Inc. v. TruServ Corp.*, 289 S.W.3d 544, 549 (Ky. 2009) (internal quotation marks omitted) (citation omitted). Plaintiff asserts Lunar fraudulently stated to the curator numerous times that she and Henning were married, and the curator detrimentally relied on this assertion. (*See* Pl.'s Am. Mem. Supp. Mot. Summ. J. 48-51). This claim is similarly premised on the Henning-Lunar marriage.

Finally, Plaintiff claims he is permitted to receive damages under KRS 446.070 (Count VI). (Pl.'s Am. Mem. Supp. Mot. Summ. J. 51). KRS 446.070 states: "A person injured by the violation of any statute may recover from the offender such damages as he sustained by reason of the violation, although a penalty or forfeiture is imposed for such violation." Plaintiff asserts that Lunar violated a criminal statute by being in "possession of a forged instrument in the second degree" in reference to Lunar's purported Venezuelan marriage certificate. (Pl.'s Am. Mem. Supp. Mot. Summ. J. 51-52). Because there is a question whether the marriage certificate was fraudulent, summary judgment is also precluded for this claim.

### e.     Claims Against AMOP & LINA

Plaintiff also requests a declaration regarding the claims asserted against AMOP and LINA in Counts VII and VIII of the Amended Complaint. Plaintiff, AMOP, and LINA subsequently agreed to hold these claims in abeyance. (Order, DN 121). Accordingly, these claims will not presently be addressed.

### B.     Plaintiff's Motions for Leave

Plaintiff has also made numerous motions for leave relating to his summary judgment. Those motions are unopposed and will be granted.

### IV.     CONCLUSION

For the foregoing reasons, **IT IS HEREBY ORDERED** as follows:

1. Plaintiff's Motion for Summary Judgment (DN 98) is **GRANTED IN PART** and **DENIED IN PART**. Larry D. Henning died on or about February 24, 2013, and he was a resident of Kentucky at the time of his death.

2. Plaintiff's Motion for Leave to Exceed Page Limit (DN 99), Plaintiff's Motion for Leave to Enlarge Time to File Exhibits (DN 100), Plaintiff's Motion for Leave to File Exhibits (DN 102), and Plaintiff's Motion for Leave to file Amended Memorandum in Support of Summary Judgment (DN 103) are **GRANTED**.

Greg N. Stivers, Chief Judge
United States District Court

March 4, 2021

cc:   counsel of record
      Anna Marie Lunar, *pro se*