UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
LOUISVILLE DIVISION
CIVIL ACTION NO. 3:18-CV-00100-GNS

**ROBERT C. WILLIAMSON,**
*in his capacity as curator of the Estate of*
*Larry D. Henning, a missing individual,*
*in Jefferson County, Kentucky Probate Court*                               **PLAINTIFF**

VS.

**AMERICAN MARITIME**
**OFFICER PLANS, et al.**                                                   **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

Kentucky resident Larry Henning ("Henning") was presumed missing at sea after debris from the fishing vessel he was traveling on washed ashore in mid-February of 2012. Over nine years later, Life Insurance Company of North America ("LINA") paid $200,000.00 in accidental death benefits to Henning's Estate. The Parties now dispute whether Plaintiff Robert C. Williamson ("Williamson"), as executor of Henning's Estate, is entitled to prejudgment interest on the payment of the $200,000.00 accidental death benefit.

Before the Court is Williamson's Motion to Conduct Limited Discovery on the issue of interest.[1] (DN 162; DN 175; DN 180). Defendant LINA has responded. (DN 164). Defendant American Maritime Officer Plans ("AMOP") has responded and filed a Motion to Dismiss for Lack of Subject Matter Jurisdiction.[2] (DN 166). Williamson replied separately to LINA (DN 171)

---

[1] The Court required Plaintiff refile his Motion for Limited Discovery based on Plaintiff's original motion's failure to include citations to referenced or quoted exhibits. (DN 174). Plaintiff complied. (DN 175). After Plaintiff brought several issues with his exhibits to his Supplemental Motion to the Court's attention, the Court again ordered Plaintiff to refile his motion. (DN 179). Plaintiff filed his Supplemented Motion for Discovery Adding/Adjusting Exhibit Numbering on March 19, 2023. (DN 180).

[2] The undersigned separately issued a Report and Recommendation as to Defendant AMOP's Motion to Dismiss for Lack of Subject Matter Jurisdiction. (DN 181). Williamson filed objections to this Report and Recommendation (DN 182) and Defendant AMOP filed a response (DN 183). On August 16, 2023, the District Judge overruled

1

and AMOP (DN 170). Fully briefed, this matter has been referred to the undersigned United States Magistrate Judge pursuant to 28 U.S.C. § 636(a)(1)(A). (DN 34).

I. Background

On June 1, 2010, Life Insurance Company of North America (LINA) issued Blanket Accident Policy Number ABL 962456 to the group policyholder American Maritime Officer Plans ("AMOP"). (DN 165-1). This Policy provided accidental death benefits for a three-year term to eligible participants. (*Id.*). Although no eligible participants were named in the Policy, Larry D. Henning ("Henning") qualified for the Policy's benefits.

In mid-February of 2013, Henning and three other individuals were traveling by fishing vessel from Charleston, South Carolina to Aruba. (DN 1, at ¶ 9-10; DN 1-2; DN 1-3). When debris from the fishing vessel was discovered 22 nautical miles east of the St. John's River, both the United States Coast Guard (USCG) and the Florida Fish and Wildlife Conservation Commission (FFWCC) undertook investigations of the shipwreck. (*Id.*). Despite exhaustive searches, Henning's body was not recovered. (DN 1-3). The USCG issued a letter on May 6, 2013, indicating it was not authorized to issue a Letter of Presumed Death and that Henning remained missing. (DN 1-2). The FFWCC's report, issued on May 19, 2013, states that Henning's status was "Missing Presumed Lost at Sea." (DN 162-2).

On September 23, 2014, Counsel for Henning's Estate requested by letter that AMOP provide any and all correspondence regarding Henning's benefits. (DN 180-5). By March of 2015, a Kentucky Probate Court granted the Curator of Henning's Estate, Robert Williamson, access to all of Henning's AMOP-held funds. (DN 180-6). Seven months later, Counsel for Henning's Estate mailed AMOP the Probate Court's Order, Henning's Will, the USCG Report, the FFWCC

---

Williamson's objections, adopted the undersigned's Report and Recommendation, dismissed Count VII with prejudice, and dismissed AMOP as a party in the action. (DN 184).

report, and a letter from USCG Captain T.W. Lutes indicating the Coast Guard was not authorized to issue a letter of presumed death. (DN 180-7; DN 104-6). On several occasions from October 2015 to March of 2016, AMOP allegedly communicated to Counsel that it could not provide information to Williamson as a beneficiary without a "presumption of death letter" or death certificate and a Florida Probate Court order. (DN 180, at PageID # 1249-50).

Another wrinkle in settling Henning's estate arose on March 11, 2016, when Ana Maria Lunar, a Florida resident, called Williamson, claiming to have been Henning's wife. (*See* DN 180-8). Several days later, on March 16, 2016, Counsel allegedly learned from an AMOP representative that Henning had two active retirement plans with AMOP, one unfunded retirement plan, and a health insurance plan with AMOP that included some life insurance from CIGNA, parent entity of LINA. (*Id.* at PageID # 2350). That same day, Counsel emailed AMOP a claim, attaching the USCG report and the FFWCC report and indicating his intent to represent Williamson as both curator of Henning's Estate and to the extent Williamson is a named heir or beneficiary on any funds payable under AMOP policies. (DN 180-8).

On April 12, 2016, AMOP submitted a claim to LINA for accidental death benefits arising from Henning's February 24, 2013 disappearance. (DN 180-9). Attached to the claim were the USCG's May 6, 2013 letter and the FFWCC's "Boating Accident" investigation report, both indicating that Henning was missing following the shipwreck. (DN 180-10). Counsel alleges AMOP did not send him a copy of this claim. (DN 180, at PageID # 2351). Eight days after the claim was filed, LINA notified the Estate's Counsel by letter that it would need additional information to process his claim, including: (1) "A finalized death certificate listing the cause and manner of death, or other formal document indicating the death of Larry Henning[;]" and (2) A letter of representation signifying that [Counsel] is the legal representative of Larry Henning's

3

Estate or beneficiary." (DN 113-2, at PageID # 1572). LINA requested Counsel provide these documents by May 11, 2016. (*Id.*).

In April, May, and June of 2016, LINA wrote to Counsel on three separate occasions, requesting the required documentation to process the claim.³ (DN 180-12; DN 180-13; DN 180-14). When LINA had not received the required documentation by July 1, 2016, it notified Counsel the claim was "closed" but not denied. (DN 180-17). The letter advised that if Counsel wished to reopen the claim at a future date, he could notify the office in writing and supply the requested information. (*Id.*). Counsel allegedly continued to communicate with AMOP and LINA representatives regarding Henning's benefits from July to December 2016. (*See* DN 180-21; DN 180, at PageID # 2353-54). LINA provided a copy of Williamson's claim file on October 20, 2016, but indicated that in order for the claim to be evaluated, LINA would need a document validating/certifying Henning's death. (DN 180-21).

Eventually, in February of 2018, Williamson filed this action against Defendants LINA, AMOP, and Lunar seeking entry of a declaratory judgment on the following issues:

> Count I – a declaration that Larry Henning died on or about February 23, 2013;
>
> Count II – a declaration that Lunar's claim of marriage is invalid;
>
> Count III – a declaration that Kentucky Law, not Florida Law, applies to Henning's presumption of death;
>
> Count IV – a declaration as to the proper beneficiary of those AMOP funds, rights and benefits in the name of Larry David Henning; and
>
> Count V – a declaration as to the proper beneficiary of the CIGNA/LINA benefits and whether the beneficiary is owed interest accruing beginning on or about February 22-24, 2013.

---

³ Elsewhere, in April of 2016, Lunar contacted AMOP, attempting to apply for her husband's benefits. (DN 180-11).

(DN 1).

Williamson later amended his Complaint to include three additional claims against Lunar: intentional interference with an inheritance interest or gift, fraudulent misrepresentation, and recovery of damages under KRS § 446.070. (DN 71). In doing so, Williamson's request for a declaration of rights as to the proper beneficiary of AMOP funds became Count VII and his request for a declaration of rights as to the proper beneficiary of CIGNA/LINA funds and entitlement to interest on such funds became Count VIII. (*Id.*).

While Williamson's claims against Lunar were proceeding through discovery, the parties agreed to bifurcate the counts involving AMOP and LINA. (DN 121). Eventually, Williamson and Lunar reached settlement of the claims relating to Lunar when she executed a settlement agreement and release on September 14, 2021. (DN 140; DN 143). Following this settlement, the Court entered an Agreed Order and Declaration of Presumptive Death, ordering that "[i]t is this court's declaratory judgment that Larry D. Henning, a Kentucky resident, died on February 24, 2013, as a result of the boating accident." (DN 148). Williamson then obtained a death certificate from the state of Florida and submitted it to LINA.

Initially, LINA believed Henning was entitled to $100,000.00 in accidental death benefits under the Blanket Accident Policy. (*See* DN 180-22). But Williamson believed Henning was entitled to a $200,000.00 benefit and asked AMOP to provide adequate information to LINA's claims department to confirm such amount. (DN 180-26). AMOP, accordingly, submitted an amended death claim to LINA, identifying the benefit as a $200,000.00 Class 3 death benefit. (*Id.*). LINA promptly reviewed the amended claim and paid the $200,000.00 death benefit to the Estate. (DN 180-4; DN 180-28).

On September 14, 2022, the remaining parties (Williamson, AMOP, and LINA) submitted

a joint status report to the Court, explaining that a dispute existed as to whether Williamson is entitled interest from LINA and whether discovery on this issue is appropriate. (DN 156). The Court permitted the Parties to proceed with formal motion practice on this issue. (DN 158). Williamson has now filed a Motion for Limited Discovery. (DN 180).

## II. Arguments

*Williamson's Motion for Limited Discovery (DN 180)*

Williamson claims he is entitled to interest on the $200,000.00 accidental death benefit paid by LINA. He requests that Count VIII of his Amended Complaint, seeking a declaration of rights against LINA, be removed from abeyance and that he be permitted to take discovery on the limited issue of interest. (DN 180, at PageID # 2343). Williamsons explains that a Policy provision gave LINA sole discretion to determine whether the evidence submitted with an accidental death claim is "satisfactory to Us[,]" which is arbitrary and capricious and requires judicial construction. (*Id.* at PageID # 2344). LINA acted arbitrarily, according to Williamson, by not considering the USCG and FFWCC Reports as *prima facie* evidence of Henning's death. (*Id.*). Williamson states that "most courts" would accord substantial weight to the USCG and FFWCC reports as "official documents" and "real evidence." (*Id.* at PageID # 2365).

Williamson contends discovery is necessary to determine whether LINA breached the Policy, ERISA, or both. (DN 162, at PageID # 1822-23). Specifically, Williamson seeks to develop information regarding whether LINA violated the Policy and ERISA: (1) by failing to pay, deny, or resist the claim; (2) by refusing to timely investigate/underwrite the claim despite receiving *prima facie* evidence of Henning's death; (3) by failing to invite any other evidence of death before accepting or rejecting the submitted evidence of Henning's death; and (4) by failing to timely provide written notice of the reasons for its decision. (*Id.* at PageID # 2357). Williamson alleges

6

LINA's underwriting process lacked administrative due process because it was procedurally irregular and influenced by bias arising from LINA's multiple roles as fiduciary, benefits obligor, and sole decisionmaker. (*Id.* at PageID # 2359-60).

Characterizing his requested discovery as "limited," Williamson proposes a maximum of 100 interrogatories to LINA, a maximum of 50 interrogatories to AMOP, unlimited requests for admission, reasonable requests for production of documents, and a right to request subpoena duces tecum for two non-parties, Henning's employer ("OSG") and the American Maritime Officers Union ("AMO"). (*Id.* at PageID # 2344). Williamson's Motion identifies at least eleven anticipated areas of inquiry, including: whether LINA had any investigative guidelines on how claims for missing persons should be investigated or underwritten; whether LINA's decision to close the claim in 2016 was shaped by bias or profit motive; and whether LINA ever paid a missing person claim based only on circumstantial evidence without a death certificate. (*Id.*, at PageID # 2364). Without this discovery, Williamson claims he cannot identify the statutes and regulations that govern prompt underwriting, investigation, and claim determination. (*Id.* at PageID # 2357).

*LINA's Response (DN 165)*

LINA maintains that its Policy provision for determining what evidence of death is "satisfactory to Us" is not arbitrary and capricious. Relying on a handful of Sixth Circuit cases, LINA explains that the term "satisfactory to Us," as used in its Policy, creates an express grant of discretion and that it was not required to accept Williamson's circumstantial evidence as "due proof of death." (DN 165, at PageID # 1873 (citing *Frazier v. Life Ins. Co. of N. Am.*, 725 F.3d 560, 566 (6th Cir. 2013); *Cooper*, 486 F.3d at 164-65; *Yeager v. Reliance Std. Life Ins. Co.*, 88 F.3d 376, 380-81 (6th Cir. 1996); *Perez v. Aetna Life Ins. Co.*, 150 F.3d 550 (6th Cir. 1998) (*en banc*)). LINA argues none of Williamson's identified topics for discovery are relevant to the issue

7

or interest or relevant to any conflict of interest or bias. (*Id.* at PageID # 1874). Per LINA, Williamson is simply trying to discover information about the substance of the claim decision, which is not permitted in ERISA cases. (*Id.* at PageID #1874-77).

*AMOP's Response (DN 166)*

AMOP submits that it is not involved in the underlying issue at stake – whether LINA owes interest to Williamson on the accidental death benefits. (DN 166, at PageID #1908). Moreover, AMOP explains it does not hold the dual role of evaluator/payor, meaning no implicit conflict of interest exists. (*Id.* at PageID # 1912). AMOP concludes that Williamson has failed to establish a sufficient factual foundation for bias or lack of due process to circumvent the general scope of ERISA discovery. (*Id.* at PageID # 1915).

*Williamson's Reply to LINA's Response (DN 171)*

Williamson claims that LINA's position that Williamson should not be able to inquire into LINA's arbitrariness because LINA could not have been arbitrary is "circular" and leaves him "with nowhere to turn." (DN 171, at PageID # 1946). According to Williamson, LINA knew that Florida's presumption-of-death statute allows circumstantial evidence as a basis of *prima facie* proof of death, but LINA still would not entertain such evidence. (*Id.* at PageID # 1947). Expounding on LINA's alleged bias, Williamson states LINA's self interest in delaying the claim decision was obvious: the longer LINA delayed the claim, the longer it could earn and keep interest on the rightful proceeds it was holding. (*Id.* at PageID # 1949). Williamson emphasizes his requested discovery is necessary because of LINA's *per se* conflict of interest as evaluator/payor, LINA's incentive to issue biased decisions, and LINA's arbitrary and capricious decision in 2016. (*Id.* at PageID # 1949). As a final note, Williamson asserts LINA could not know whether any of his prospective discovery requests are relevant to the issue of interest because LINA has not

received the requests. (*Id*. at PageID # 1950).

*Williamson's Reply to AMOP's Response (DN 170)*

Williamson agrees that AMOP is not a fiduciary as both the "Policyholder" and the premium-payer of the LINA Blanket Accident Policy at issue, which he believes means the ERISA discovery limitations do not apply. (DN 170, at PageID # 1938-39). Discovery from AMOP, Williamson explains, "may help" resolve the issues with LINA of Plaintiff's entitlement to interest. Williamson further advances that all communications between AMOP and LINA "could be relevant" to establishing the reasons behind LINA's 2016 decision to close Williamson's claim and unexplained insistence upon a death certificate as *prima facie* proof of death. (*Id.* a PageID # 1941).

### III. Legal Standards

Generally, discovery in ERISA cases is limited to the administrative record. *Gluc v. Prudential Life Ins. Co. of Am.*, 309 F.R.D. 406, 411 (W.D. Ky. 2015) (citing *Wilkins v. Baptist Healthcare Sys., Inc.,* 150 F.3d 609, 618 (6th Cir. 1998)). Two governing principles support this limitation. First, the reviewing court must determine "whether the administrator's decision was proper, based on the administrative record," not whether the claimant was eligible for benefits. *Kasko v. Aetna Life Ins. CO.*, 33 F. Supp. 3d 782, 785-86 (E.D. Ky. 2014) (citing *Perry v. Simplicity Eng'g,* 900 F.2d 963, 966 (6th Cir. 1990)). Second, ERISA's primary goal is the "inexpensive and expeditious resolution of disputes." *Id.* (citing *Perry*, 900 F.2d at 966-67).

This general rule, however, is not without exception. Discovery beyond the administrative record may be appropriate when a claimant mounts "a procedural challenge to the administrator's decision, such as an alleged lack of due process afforded by the administrator or alleged bias on its part." *Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 171 (6th Cir. 2007) (citing *Wilkins*, 150

F.3d at 619). In *Glenn*, the United States Supreme Court determined that "when a plan administrator both evaluates claims for benefits and pays benefits claims," a *per se* conflict of interest exists. *MetLife Ins. Co. v. Glenn*, 554 U.S. 105, 112 (2008). Though *Glenn* did not explicitly address the bounds of discovery, the decision "strongly implies . . . that some discovery is available to ERISA plaintiffs to the extent that such plaintiffs find themselves faced with such a *per se* conflict of interest." *Mullins v. Prudential Ins. Co. of Am.*, 267 F.R.D. 504, 510-11 (W.D. Ky. 2010).

Following *Glenn*, district courts in the Sixth Circuit took two contrasting approaches to the threshold for conflict-of-interest discovery. *Myers*, 316 F.R.D. 186, 195 (W.D. Ky. 2016). The first line of cases found "the mere presence of an evaluator/payor conflict is sufficient to allow discovery outside of the administrative record." *Davis v. Hartford Life & Accident Ins. Co.*, 3:14-cv-00507-TBR, 2015 WL 7571905, at *2 (W.D. Ky. Nov. 24, 2015). These courts rationalized that "denying discovery until there has been an initial showing of bias 'essentially handcuffs the plaintiff, who . . . will rarely have access to any evidence beyond a bare allegation of bias, in the absence of discovery.'" *Kasko*, 33 F. Supp. 3d at 786-87 (quoting *Kinsler v. Lincoln Nat. Life Ins. Co.*, 660 F.Supp.2d 830, 836 (M.D. Tenn. 2009)); *see Davis,* 2015 WL 7571905, at *2. The other line of cases, adversely, found that "an allegation of bias alone is insufficient." *Myers*, 316 F.R.D. at 195. Under this "heightened-requirement" approach, "a plaintiff must make a sufficient factual showing to expand discovery beyond the administrative record." *Id.* (citing *Kasko*, 33 F. Supp. 3d at 787); *see also Clark v. Am. Elec. Power Sys. Long Term Disability Plan*, 871 F.Supp.2d 655, 662 (W.D. Ky. 2012)); *Donovan v. Hartford Life & Acc. Ins. Co.,* No. 1:10-2627-PAG, 2011 WL 1344252, at *2 (N.D. Ohio Apr. 8, 2011); *Geer v. Hartford Life & Acc. Ins. Co.*, No. 08-12837-DAS, 2009 WL 1620402, at *5 (E.D. Mich. June 9, 2009).

In 2017 and 2018, the Sixth Circuit issued two unpublished opinions that followed the "heightened requirement" approach: *Collins v. Unum Life Ins. Co. of Am.*, 682 F. App'x 381, 389 (6th Cir. 2017) and *Guest-Marcotte v. Life Ins. Co. of N. Am.*, 730 F. App'x 292, 304 (6th Cir. 2018). In *Collins*, the Sixth Circuit stated that discovery is not "automatically . . . available any time the defendant is both the administrator and payor under an ERISA plan." 682 F. App'x at 389 (quoting *Johnson v. Conn. Gen. Life Ins. Co.*, 324 F. App'x 459, 467 (6th Cir. 2009)). Rather, the claimant "must put forth a factual foundation to establish that he has done more than merely allege bias." *Id.* (citing *Pearce v. Chrysler Grp., LLC Pension Plan*, 615 F. App'x 342, 350 (6th Cir. 2015)). Because the claimant in *Collins* pointed to nothing more than a general observation that the defendant had a financial incentive to deny his claim, the court found "his mere allegation of bias on the inherent conflict of interest" was insufficient to permit additional discovery. *Id.*

Similarly, in *Guest-Marcotte*, the Sixth Circuit specified that "an ERISA claimant must first 'provide sufficient evidence of bias – or of any procedural irregularity – to justify prehearing discovery[.]'" 730 F. App'x at 304 (quoting *Likas v. Life Ins. Co. of N. Am.*, 222 F. App'x 481, 486 (6th Cir. 2007)). The Sixth Circuit further explained that "a mere allegation of bias is insufficient to throw open the doors of discovery in an ERISA case.'" *Id.* (quoting *Likas*, 222 F. App'x at 486). The court affirmed the district court's denial of discovery because the claimant had made only conclusory showings of bias. *Id.*

Despite *Collins* and *Guest-Marcotte* being unpublished decisions, another judge in this District has found these opinions to be "highly persuasive[,]" noting how other districts within the Sixth Circuit have begun transitioning toward the heightened-requirement approach. *Ruhe v. Hartford Life & Accident Ins. Co.*, No. 1:20-CV-00145-GNS-HBB, 2020 WL 6946576, at *4 (W.D. Ky. Nov. 25, 2020) (citing *Canter v. Alkermes Blue Care Elect Preferred Provider Plan*,

11

328 F.R.D. 485, 495-97 (S.D. Ohio 2018); *Baker v. Ohio Operating Eng'rs Pension Plan*, 312 F.Supp.3d 674, 678-80 (S.D. Ohio); *Mitchell v. Unum Life Ins. Co. of Am.*, No. 1:18-CV-94, 2019 WL 7758858, at *2 (E.D. Tenn. Oct. 24, 2019), *vacated in part by* No. 1:18-CV-94, 2020 WL 13442455 (E.D. Tenn. Aug. 12, 2020)).

## IV. Analysis

Williamson's lone claim involving LINA is Count VIII, which seeks a declaration of the proper beneficiary of the LINA funds and benefits in Henning's name and whether Williamson is entitled to interest on those funds and benefits. The issue of the proper beneficiary was resolved after Williamson and Lunar settled their claims, and LINA disbursed the $200,000.00 in accidental death benefits to Henning's Estate. All that remains is whether Williamson is entitled to prejudgment interest. ERISA does not mandate any award of prejudgment interest to prevailing plan participants; however, district courts may award prejudgment interest in their discretion in accordance with general equitable principles. *Ford v. Uniroyal Pension Plan*, 154 F.3d 613, 616 (6th Cir. 1998) (allowing prejudgment interest in suit under § 502(a)(1)(B) for withheld benefits).

Williamson's request for discovery on the issue of interest fails for several reasons. First, Williamson is attempting to extend discovery far beyond the issue of interest. Though the form of Williamson's motion purports to seek discovery relating to whether he is entitled to prejudgment interest on LINA's payment of the $200,000.00 death benefit, in substance, his motion seeks discovery relating to LINA's claim adjudication and decision and LINA's general policies and procedures. But Williamson has never brought a claim in this action against LINA, or any other defendant, under § 502 of ERISA alleging either wrongful denial of benefits or breach of fiduciary duty. Instead, his claim for prejudgment interest stands alone.[4]

---

[4] Williamson cites to *Jackson v. Fortis Benefits Ins. Co.*, where the Eighth Circuit stated that "prejudgment interest is not available under ERISA § 502(a)(3)(B), 29 U.S.C.§ 1132(a)(3)(B), absent a showing that a plan administrator

12

Nor is Williamson's attempt to circumvent the ERISA's limited discovery standard by pointing to LINA's inherent conflict of interest successful. Williamson is correct that LINA has an inherent conflict of interest due to its concurrent roles of claim administrator and claim payor. But the existence of this conflict of interest alone is insufficient to warrant additional discovery in this case. Guided by *Collins* and *Guest-Marcotte,* Williamson was required to make more than a mere allegation of bias and provide sufficient evidence of procedural irregularity. He has not.

The "anticipated" discovery inquiries that Williamson has identified seek information as to:

- whether LINA had any "investigative guidelines" on how missing-persons claims should be investigated or underwritten;

- whether LINA considers its procedure in this case to be post-claim underwriting;

- LINA's applicable internal rules, corporate policies, review procedures for claims that are not paid, denied, nor resisted, but instead placed in a pending file;

- LINA's requirements about sharing information with a claimant and the policy's beneficiary;

- applicable federal and state regulations governing post-claim underwriting;

- whether LINA was a member of any associations that provided industry standards;

- whether LINA procedurally complied with its insurance contract and with ERISA;

- whether LINA's decision to close the claim in 2016 was shaped in part by bias or profit?

- whether LINA is a fiduciary under ERISA irrespective of descriptive title?

- whether LINA's decision to shelve the claim complied with its fiduciary obligations?

- what standards for "proof of loss" has LINA applied to similar missing-at-sea cases?

- has LINA ever paid a missing person claim based on only circumstantial evidence without a death certificate?

(DN 180, at PageID # 2364-65). All but one of those inquiries go directly to LINA's investigation

---

has either breached ERISA's statutory obligations or the terms of the plan document." Whether or not Williamson is entitled to prejudgment interest in this case and which legal standards apply to such a claim is not the issue to be resolved in this Motion.

13

and adjudication of the claim, which, as noted above, is not a live claim in the action, or go to LINA's general investigative procedures and standards, which courts within this District have found are not discoverable.[5]

Williamson's only anticipated inquiry mentioning "bias" does so in a broad and conclusory manner. Williamson's descriptions of the information he seeks to discover, i.e., whether LINA violated ERISA or the Policy by denying/failing to pay the claim and by failing to investigate the claim despite *prima facie* evidence of death, likewise demonstrate he is seeking information relevant to claim adjudication and policy interpretation.

Other district courts within the Sixth Circuit have identified "permitted areas of inquiry – topics on which discovery related to an inherent conflict of interest may be had by an ERISA plaintiff," which include:

- "incentive, bonus or reward programs or systems formal or informal for any employees involved in any meaningful way in reviewing disability claims." *Myers v. Prudential Ins. Co. of Am.*, 581 F. Supp. 2d 904, 914 (E.D. Tenn. 2008).

- "contractual connections between [plan administrator/payor] . . . and the reviewers utilized in Plaintiff's claim . . . and financial payments paid annually to the reviewed from the [administrator/payor]." *Pemberton v. Reliance Standard Life Ins. Co.*, No. 08-86-JBC, 2009 WL 89629, at *3 (E.D. Ky. Jan. 13, 2009).

- "statistical data regarding the number of claims files sent to the reviewers and the number of denials which resulted." *Id.*

- "number of times the reviewers found claimants able to work in at least a sedentary occupation of found that claimants were not disabled." *Id.*

- "documentation of administrative processes designed only to check the accuracy of grants of claims (limited to claims guidelines actually consulted to adjudicate Plaintiff's claim)." *Bird v. GTX, Inc.*, No. 08-2852-JPM-cgc, 2009 WL 3839478, at *3 (W.D. Tenn. Nov. 13, 2009).

---

[5] *See Myers*, 316 F.R.D. at 209 ("A claimant is entitled to production of administrative materials used in processing *her claim* for benefits, but is not entitled to administrative materials that were not relied upon in relation to her case.") (citing *Davis,* 2015 WL 7571905, at *10). And, even though those materials used in processing a specific claim for benefits might be discoverable, *Myers* and *Davis* were both cases where the claimant had asserted breach of contract or breach of fiduciary under § 502 of ERISA, unlike Williamson's stand-alone interest claim here.

*Myers*, 316 F.R.D. at 196 (quoting *Gluc*, 309 F.R.D. at 414). Williamson cites to *Myers* to support conflict-of-interest discovery in the instant case. However, none of Williamson's anticipated discovery inquiries align with the "permitted areas of inquiry" compiled in *Myers* and *Gluc*. Additionally, though *Myers* and *Gluc* found the above topics permissible, they did not deal with stand-alone claims of prejudgment interest. These cases instead weighed the conflict of interest in considering whether an administrator wrongly denied benefits or breached its fiduciary duty. Those circumstances are not present here.

Additionally, none of the cases or other resources that Williamson cites in support of his claim that LINA has violated industry standards and applied the instant Policy with bias are relevant or applicable to the lone claim regarding prejudgment interest in this case. Williamson cites to an article from the 2017 issue of the National Association of Insurance Commissioners (NAIC) Journal of Insurance Regulation titled "Denied and Resisted Life Insurance Claims: recommended Changes to Schedule F." (DN 180-30). That article explains the differences between denied and resisted insurance claims and identifies another set of claims where the insurance company is holding payment for sufficient evidence, otherwise known as "in the course of settlement." (DN 180, at PageID # 2358 (citing DN 180-30, at PageID # 2498, n. 1)). Williamson claims this document "adds color to the otherwise drab picture currently available . . . of LINA's practice and industry standards." (*Id.*). Though this journal article is generally informative regarding insurers' handling practices of denied or resisted claims,[6] nothing in this article provides an inference that LINA delayed payment of Williamson's claim because of bias. And even if it had, the issue here is whether Williamson is entitled to prejudgment interest on LINA's payment

---

[6] The Journal itself identifies its primary objective as providing "a forum for opinion and discussion on major insurance regulatory issues." (DN 180-30, at PageID # 2496).

of the claim, not whether LINA wrongfully withheld or delayed benefits. While the latter might be a component of determining whether Williamson is entitled to prejudgment interest, it appears Williamson only haphazardly cites to this article and asserts bias to avoid ERISA's strict discovery standards.

Williamson also cites to several cases he believes support his claim for discovery. First, he mentions a case from the Middle District of Georgia, *Acree v. Hartford Life & Accident Insurance Company*, wherein the insurance administrator denied accidental death benefits where the manner of death was undetermined. 917 F. Supp. 2d 1296, 1320 (M.D. Ga. 2013). The court found the plan administrator's failure to investigate or to interpret honestly evidence that preponderated in one direction was a sufficient basis for finding the administrators' decision to be arbitrary and capricious. *Id.* at 1321. The court's decision in *Acree* has limited applicability here – where the sole issue before the Court is whether Williamson is entitled to prejudgment interest on the $200,000.00 accidental death benefit LINA paid. *Acree* neither addressed prejudgment interest nor exceptions to ERISA's strict discovery standard.

The same is true for Williamson's reliance on *Shelby County Health Care Corporation v. Genesis Furniture Industry Incorporated.* There, the Northern District of Mississippi found that the plan administrator's failure to timely render a claim decision was a procedural failure and supported a claim for breach of fiduciary duty. 100 F. Supp. 3d 577 (N.D. Miss. 2015). Williamson highlights how the *Genesis* court discussed that the insurer's notices requesting additional information failed to comply with the administrator's obligations under both the policy and ERISA to establish why a formalized death certificate was necessary under the plan. *Id.* Certain facts from *Genesis* appear similar to the facts in this case, such as the administrator's requirement of a formal death certificate. The posture of *Genesis,* however, differs greatly from the posture here. In

16

*Genesis*, the court was ruling on summary judgment; it did not address a claim for prejudgment interest or whether discovery would be appropriate on such a claim.

Lastly, Williamson cites to *Moore v. Lafayette Life Ins. Co.* from the Sixth Circuit as recognizing an equitable claim by a participant against an ERISA plan fiduciary arising out of 29 U.S.C. § 1132(a)(3) when a fiduciary misleads a participant or beneficiary. 458 F.3d 416, 432-43 (6th Cir. 2006). The Court again struggles to connect the holdings of this case with the motion at hand. The portion of the *Moore* opinion cited by Williamson discussed a breach-of-fiduciary claim under ERISA. No breach-of-fiduciary claim against LINA, or any other defendant, has ever been pleaded in this case. While *Moore* discusses the breach-of-fiduciary claim as equitable in nature, it does not discuss prejudgment interest or whether discovery should be permitted on claims for prejudgment interest.

The fact that Williamson views LINA's investigation as insufficient does not establish bias or provide sufficient evidence of procedural irregularity. It appears that Williamson is attempting to use this motion for discovery to expand the scope of the lone remaining claim in the action – whether Henning's Estate is entitled to prejudgment interest on the $200,000.00 accidental death benefit LINA has paid. Williamson argues the merits of his claim by invoking the arbitrary and capricious standard and emphasizing that "most courts" would have found the USCG and FFWCC reports to be *prima facie* evidence of death. As explained above, whether LINA acted arbitrarily or capriciously is not an active claim before this Court and is not the subject of the instant motion for discovery. Williamson has not established a sufficient claim of bias or procedural irregularity to warrant the sweeping discovery he has requested from LINA.

Additionally, Williamson is not entitled to discovery from AMOP. He claims discovery is necessary from AMOP because it "may help" resolve the issue of interest with LINA and all

17

communications between AMOP and LINA "could be relevant" to LINA's adjudication of Williamson's claim. This reasoning is simply too vague and once again demonstrates Williamson's attempts to expand the scope of his lone remaining claim for prejudgment interest.

Even if Williamson were entitled to discovery on the issue of interest, the requests he has outlined are in no way limited or tailored. Though he didn't produce the specific discovery requests he plans to serve, he requests a maximum of 100 interrogatories to LINA, a maximum of 50 interrogatories to AMOP, unlimited requests for admission, reasonable requests for production of documents, and two subpoenas duces tecum for non-parties. The breadth of these requests would be considered unreasonable in most ordinary cases; their breadth is particularly offensive in an ERISA action. Williamson has made no showing that if he could establish sufficient factual allegations of bias or conflict of interest relating to his claim of interest that he would be entitled to the voluminous discovery he has outlined.

## V. Conclusion

For the reasons outlined in this opinion, **IT IS HEREBY ORDERED** that Plaintiff's Motion for Limited Discovery (DN 162; DN 175; DN 180) is **DENIED.** The Parties shall jointly contact the undersigned's case manager ashley_henry@kywd.uscourts.gov to schedule a telephonic conference to discuss next steps in this action.

Copies: Counsel of Record