UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:18-CV-100-CRS

ROBERT C. WILLIAMSON
*in his capacity as Executor of the Estate of*
*Larry D. Henning*                                                                                              PLAINTIFF

v.

LIFE INSURANCE COMPANY OF
NORTH AMERICA, CIGNA[1]                                                                                 DEFENDANT

## INTRODUCTION

Larry D. Henning was declared missing at sea in 2013. FFWCC Report, DN 180-21 at PageID# 2438. A few months after Henning's disappearance, Henning's Estate requested that the United States Coast Guard issue a Letter of Presumed Death. Coast Guard Report, DN 180-21 at PageID# 2436. The Coast Guard advised that it lacked the authority to do so and, thus, stated only that "Henning remains missing." *Id.* Nevertheless, the Estate pursued Henning's accidental death benefits from defendant Life Insurance Company of North America (LINA). Complaint, DN 1. In 2022, following years of litigation, the parties agreed to the entry of an order declaring that Henning had died in 2013. Order, DN 148. Shortly after the Court entered an Order to that effect, the Estate obtained a death certificate and LINA paid $200,000 in accidental death benefits to the Estate. Motion, DN 198 at PageID# 2875; Response, DN 201 at PageID# 2938. Now, the Estate seeks an award of prejudgment interest on those benefits. Motion, DN 198. It also seeks an award of attorneys' fees. *Id.* It moves for summary judgment on both issues. *Id.*

The Estate argues that a prejudgment interest award is justified under the Employee Retirement Income Security Act (ERISA) because LINA wrongly delayed payment of the

---

[1] Life Insurance Company of North America is the sole remaining defendant. The Estate's claims against all other defendants have been settled or dismissed as moot. Order, DN 143; Order, DN 184.

accidental death benefits. *Id.* at PageID# 2860. First, the Estate attributes wrongful delay to LINA's conditioning the payment of benefits on the receipt of a death certificate. *Id.* at PageID# 2877. The Estate contends that the insurance policy did not grant LINA discretion to make such a demand. *Id.* at PageID# 2875. The Estate argues in the alternative that even if LINA had such discretion, the demand for a death certificate was unreasonable and therefore caused undue delay. *Id.* at PageID# 2877. The Estate also attributes wrongful delay to LINA's failure to conduct an independent investigation into Henning's disappearance. *Id.* at PageID# 2882. The Estate contends that doing so would have much more readily led LINA to the conclusion that Henning was dead, saving years of litigation. *Id.* Finally, the Estate attributes wrongful delay to LINA's breaching several terms of the policy. *Id.* at PageID# 2884-85.

The record evidence before the Court does not support granting summary judgment to the Estate on any of these grounds. Thus, it does not support granting an award of prejudgment interest to the Estate. Further, because the Estate's claim for attorneys' fees under ERISA requires a showing of success on its claim for prejudgment interest, such an award is likewise inappropriate. Accordingly, the Court will deny the Estate's motion for summary judgment.

## BACKGROUND

On June 1, 2010, LINA issued an accidental death benefits policy (the Policy) to American Maritime Officers Plans (AMOP), a group policyholder. Policy, DN 198-1 at PageID# 2892. The Policy provided accidental death benefits to eligible participants. *Id.* Kentucky resident Larry D. Henning was an eligible participant. Amended Claim Form, DN 180-26; Letter of Employment, DN 71-6 at PageID# 698.

In February of 2013, Henning and three other men set off on a fishing vessel from Charleston, South Carolina, intending to reach Aruba. Coast Guard Report, DN 180-21 at

2

PageID# 2436. On February 24, 2013, the U.S. Coast Guard Sector Jacksonville, Florida discovered debris and lifejackets from Henning's vessel approximately 22 nautical miles east of the St. John's River. *Id.* The Coast Guard and the Florida Fish and Wildlife Conservation Commission (FFWCC) searched 2,875 square nautical miles over three days before efforts were suspended. *Id.*; FFWCC Report, DN 180-21 at PageID# 2438. While one body was recovered from the wreckage, Henning was never found. *Id.* The FFWCC issued a report describing the investigation. FFWCC Report, DN 180-21 at PageID# 2438. The report stated that Henning remained "missing." *Id.* It did not declare that Henning was dead or presumed dead. *Id.* When Henning's Estate requested a Letter of Presumed Death from the Coast Guard, the Coast Guard responded by letter that it was not authorized to issue one and that "Henning remains missing." Coast Guard Report, DN 180-21 at PageID# 2436. The Coast Guard's letter also included its own report of the investigation. *Id.*

On August 12, 2014, Williamson was appointed curator for Henning's Estate. Complaint, DN 1 at PageID# 2. On September 23, 2014, the Estate informed AMOP that "Henning was lost at sea as a result of an apparent collision." Letter, DN 180-5. On October 2, 2015, the Estate sent AMOP the Coast Guard's and FFWCC's reports. Email, DN 180-7.

On October 10, 2015, Ana Maria Lunar, a Venezuelan native and Florida resident, called the Coast Guard and claimed to be Henning's widow. Amended Complaint, DN 71 at PageID# 627; *see* Coast Guard Letter, DN 71-6 at PageID# 665. On March 11, 2016, Lunar began calling Williamson to inquire about Henning's Estate. Amended Complaint, DN 71 at PageID# 628. Lunar claimed that she and Henning had married in Venezuela in 2012 and that she intended to claim Henning's accidental death benefits. *Id.* at PageID# 628; Affidavit of Williamson, DN 71-6 at PageID# 695. Shortly thereafter, Lunar faxed AMOP a purported marriage certificate.

3

Certificate, DN 71-4. AMOP rejected the certificate due to its defective apostille. Amended Complaint, DN 71 at PageID# 630; Affidavit of Williamson, DN 71-6 at PageID# 696. A Venezuelan attorney later investigated the certificate at the Estate's behest and concluded that it was a forgery. Amended Complaint, DN 71 at PageID# 632-34.

On March 17, 2016, the Estate emailed AMOP to claim "any life insurance benefits that may become payable to the estate." Email, DN 198-6 at PageID# 2925. On February 17, 2016, AMOP notified LINA that Henning "was in a fatal boating accident" and that AMOP would be filing a claim for his insurance benefits. Email, DN 198-5. On April 12, 2016, AMOP sent LINA a completed claim form as well as the Coast Guard and FFWCC reports. Claim Form, DN 180-10. According to the parties, LINA never sent a claim form directly to the Estate. Motion, DN 198 at PageID# 2884; Response, DN 201 at PageID# 2947. But on April 20, 2016, LINA notified the Estate that in order to process the claim, LINA required "[a] finalized death certificate . . . or other formal document indicating the death of Larry Henning." First Letter, DN 180-12. LINA sent similar requests on May 13 and June 9, 2016, but the Estate did not respond. Second Letter, DN 180-13; Third Letter, DN 180-14. On July 1, 2016, LINA notified the Estate that the claim was closed but not denied. Final Letter, DN 180-17. LINA explained that the Estate could reopen the claim by "supply[ing] the requested information as described in our prior letters." *Id.*

On February 16, 2018, Williamson, in his capacity as Executor of the Estate, brought this civil action against LINA, AMOP, and Lunar. Complaint, DN 1. Count VIII of the Estate's complaint sought declaratory judgment "as to the proper beneficiary of [the LINA] benefits and whether and to what extent the beneficiary is owed statutory interest." Amended Complaint, DN 71 at PageID# 641.

4

The Estate's claim for benefits was resolved in March of 2022 by agreed order. Order, DN 148. That order declared that "Larry D. Henning, a Kentucky Resident, died on February 24, 2013, as a result of the boating accident." *Id.* The Florida Bureau of Vital Statistics subsequently issued a death certificate which the Estate submitted to LINA on March 11, 2022. Death Certificate, DN 180-3. LINA reviewed the Estate's claim and on March 30, 2022, it paid $200,000 directly to the Estate. Motion, DN 198 at PageID# 2875; Response, DN 201 at PageID# 2938.

This left the Estate's claim against LINA for prejudgment interest on those benefits. On March 1, 2024, the Estate filed the present motion for summary judgment on that claim. Motion, DN 198. As noted above, the Estate also seeks an award of "reasonable attorneys' fees" from LINA. *Id.*

## **LEGAL STANDARD**

The Court shall grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant seeking summary judgment bears the initial burden of "informing the district court of the basis of its motion" and demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may satisfy that burden by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1). When considering a motion for summary judgment, the Court must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

5

## ANALYSIS

The Estate argues that an award of prejudgment interest on Henning's accidental death benefits is appropriate under ERISA.[2] First, the Estate argues that LINA wrongly delayed payment for years by rejecting "sufficient proof of [Henning's] death" and by failing to independently investigate Henning's disappearance. Motion, DN 198 at PageID# 2860. The Estate contends that the Policy did not clearly grant LINA discretion to determine what "proof of loss" was required for the payment of benefits. *Id.* at PageID# 2875. Thus, governing caselaw requires that the Court review LINA's decisions as to those requirements *de novo*. *Id.* Upon *de novo* review, the Estate urges the Court to find that LINA's demand for a death certificate was unwarranted and, thus, the delay caused by it justifies a prejudgment interest award. *Id.* Further, the Estate argues that even if the Policy granted discretion, LINA abused its discretion by arbitrarily and capriciously requiring a death certificate as proof of loss while failing to investigate the circumstantial evidence of Henning's death. *Id.* at PageID# 2877, 2882.[3]

Second, the Estate alleges that LINA breached several terms of the Policy. *Id.* at PageID# 2884. Specifically, the Estate contends that LINA 1) failed to provide claim documents to the Estate as required; 2) failed to provide Henning with a certificate of insurance as required; and 3) entered an illegal "paying agent agreement" with AMOP. *Id.* at PageID# 2884-85. The Estate

---

[2] The Estate also argues that it is entitled to prejudgment interest and attorneys' fees under Florida state law. Motion, DN 198 at PageID# 2877; 2890. However, the Policy at issue is an employee benefit plan governed by ERISA. Policy, DN 165-1 at PageID# 1904 ("This Policy is a Plan document within the meaning of ERISA."); *see* 29 U.S.C. § 1003(a). And ERISA "supersede[s] any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" governed by that title. 29 U.S.C. § 1144(a). Accordingly, the Estate's state law claims are preempted.

[3] The Estate also asserts that LINA's role in both determining eligibility for benefits and paying benefits out of its pocket created a conflict of interest. Motion, DN 198 at PageID# 2877. However, the Estate does not provide an argument as to why this conflict would justify a prejudgment interest award. Thus, the Court will not address it. *United States v. Fowler*, 819 F.3d 298, 309 (6th Cir. 2016) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in [a] skeletal way, leaving the court to put flesh on its bones.") (citations omitted).

argues that each of these breaches resulted in unnecessary delay. *Id.* These alleged untoward delays root the Estate's motion for prejudgment interest and attorneys' fees.

**A. The Estate is not entitled to summary judgment on its claim for prejudgment interest.**

Although ERISA does not expressly provide for it, the Sixth Circuit has held that courts may award prejudgment interest in appropriate cases. *Rochow v. Life Ins. Co. of N. Am.*, 780 F.3d 364, 374-76 (6th Cir. 2015). Specifically, beneficiaries of insurance plans subject to ERISA "have a right to prejudgment interest on benefits wrongly withheld." *Wells v. U.S. Steel*, 76 F.3d 731, 737 (6th Cir. 1996). Prejudgment interest awards should "compensate a beneficiary for the lost interest value of money wrongly withheld from him or her." *Rybarczyk v. TRW, Inc.*, 235 F.3d 975, 985 (6th Cir. 2000) (quoting *Ford v. Uniroyal Pension Plan*, 154 F.3d 613, 618 (6th Cir. 1998)). Furthermore, because § 1132(a)(1)(B) of ERISA "offers a means to obtain complete redress for ERISA plaintiffs injured by withheld benefits," a standalone claim for prejudgment interest is permissible "when the plaintiff is not made whole by the overdue payment of benefits." *Mulder v. Loc. 705 Int'l Bhd. of Teamsters, Pension Fund*, 794 F. App'x 451, 455 (6th Cir. 2015) (citing *Rochow*, 780 F.3d at 371-72).

**1. The Estate's "Proof of Loss" Arguments**

As a preliminary matter, the Estate urges the Court to find that the Policy did not clearly grant LINA discretion to determine what "proof of loss" was sufficient to proceed with the benefits payment of benefits. Motion, DN 198 at PageID# 2875. The Estate argues that the Court should therefore apply *de novo* review. *Id.* The Court disagrees. The Policy clearly granted LINA discretion. Thus, the Court will apply the more deferential "arbitrary and capricious" standard to LINA's decisions concerning proof of loss.

7

In an action alleging wrongly withheld benefits under ERISA, courts review the administrator's decisions *de novo* unless the policy grants the administrator discretion "to determine eligibility for benefits or to construe the terms of the plan." *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 115 (1989). If the policy does grant discretion, courts review the administrator's decisions under the highly deferential "arbitrary and capricious" standard of review. *Shelby Cnty. Health Care Corp. v. Majestic Star Casino*, 581 F.3d 355, 365 (6th Cir. 2009). While there are no required "magic words," the policy must "contain a clear grant of discretion." *Frazier v. Life Ins. Co. of N. Am.*, 725 F.3d 560, 566 (6th Cir. 2013).

Here, the Policy contains a clear grant of discretion to LINA to determine what proof of loss is sufficient for the payment of benefits. The Policy provides that "[w]ritten or electronic proof of loss *satisfactory to US* must be given to Us at our office, within 90 days of the loss for which the claim is made." Policy, DN 198-1 at PageID# 2907 (emphasis added). The Sixth Circuit has consistently found that "satisfactory proof" and similar terms constitute clear grants of discretion to administrators. *Frazier*, 725 F.3d at 567; *see also Perez v. Aetna Life Ins. Co.*, 150 F.3d 550, 555 (6th Cir. 1998) (finding discretion when the policy required "proof or evidence of disability . . . satisfactory to the insurer or plan administrator"); *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 983 (6th Cir. 1991) (finding discretion when the policy required "medical evidence satisfactory to the Insurance Company"); *Yeager v. Reliance Standard Life Ins. Co.*, 88 F.3d 376, 380 (6th Cir. 1996) (finding discretion when the policy required claimant to provide "satisfactory proof of Total Disability to us").

The Estate argues that this grant of discretion is made ambiguous by a nearby provision which states that "[i]f claim forms are not sent within 15 days after We receive notice, the proof requirements *will be met* by submitting . . . written or authorized electronic proof of the nature

and extent of the loss for which the claim is made." Motion, DN 198 at PageID# 2860 (quoting Policy, DN 198-1 at PageID# 2906) (emphasis added). The Estate observes that this provision includes no requirement that the proof of loss be "satisfactory" to LINA. Motion, DN 198 at PageID# 2860. True, but the provision comes from a section entitled "Claim Forms." Policy, DN 198-1 at PageID# 2906. That section defines the procedures for filing claims; it does not purport to define the requirements for proof of loss. *Id.* Conversely, the provision defining "proof of loss" as proof "satisfactory to Us" is located in a section entitled "Proof of Loss." *Id.* at PageID# 2907. Read in its full context, then, the Policy's grant of discretion remains clear. Accordingly, the Court will apply the "arbitrary and capricious" standard to LINA's decisions concerning proof of loss.

Next, the Estate argues that even if the Policy grants LINA discretion, LINA acted arbitrarily and capriciously. Specifically, the Estate contends that LINA's absolute requirement of a death certificate and its failure to further investigate the circumstantial evidence of Henning's death were unreasonable. Motion, DN 198 at PageID# 2877, 2882. Because the Court finds that it is possible to offer a reasoned explanation for LINA's decisions, the Court cannot conclude as a matter of law that LINA acted arbitrarily and capriciously.

Under the arbitrary and capricious standard of review, courts "must decide whether the plan administrator's decision was rational in light of the plan's provisions." *Williams v. Int'l Paper Co.*, 227 F.3d 706, 712 (6th Cir. 2000). "[W]hen it is possible to offer a reasoned explanation, based on the evidence, for a particular outcome, that outcome is not arbitrary or capricious." *Id.* In reviewing an administrator's decision under the arbitrary and capricious standard, courts "are required to consider only the facts known to the plan administrator at the time he made his decision." *Yeager*, 88 F.3d at 381.

9

The Estate argues that there was no reasoned explanation for LINA's insistence on a death certificate as a predicate to distributing the benefits. Motion, DN 198 at PageID# 2877. The Estate contends that because Henning's body was never recovered, "producing a death certificate was virtually impossible and would take years under either the presumptive death statutes of Kentucky or Florida." Reply, DN 202 at PageID# 2951. Further, the Estate contends that LINA already had evidence of Henning's death. *Id.* at PageID# 2952. Specifically, the Estate points to the reports issued by the U.S. Coast Guard and the FFWCC and submitted to LINA. *Id.* Both reports stated that Henning was missing and that debris and lifejackets from his vessel had been discovered. Coast Guard Report, DN 180-21 at PageID# 2436; FFWCC Report, DN 180-21 at PageID# 2438. The FFWCC Report also stated that one body had been recovered from the wreckage. *Id.* While neither report concluded that Henning was dead or even presumed dead, *Id.*, the Estate argues that they should have constituted sufficient evidence to proceed with the claim for benefits. Reply, DN 202 at PageID# 2952-53.

The Court is unpersuaded. As LINA explains in its Response, LINA knew only that Henning had disappeared at sea after a boating accident and that both government agencies tasked with investigating Henning's disappearance classified him as "missing." Response, DN 201 at PageID# 2939, 2944-45; *see* Coast Guard Report, DN 180-21 at PageID# 2436; FFWCC Report, DN 180-21 at PageID# 2438. Further, LINA knew that an "alleged wife from Venezuela submitted a fraudulent marriage certificate to assert a claim for benefits." Response, DN 201 at PageID# 2945; *see* Email from LINA, DN 180-8 at PageID# 2380. Given these circumstances, the Court cannot find as a matter of law that LINA lacked a reasoned explanation for requiring more objective proof of Henning's death. *Hogan v. Life Ins. Co. of N. Am.*, 521 Fed. App'x. 410, 416-17 (6th Cir. 2013) ("it was reasonable, based on the thin and conclusory evidence Hogan

10

submitted to LINA, and on Hogan's failure to respond to LINA's notice that it could not grant her claim without [further] evidence . . . for LINA to deny that she was disabled within the plan's terms."); *Cooper v. Life Ins. Co. of N. Am.*, 486 F.3d 157, 166 (6th Cir. 2007) ("Requiring a claimant to provide objective medical evidence of disability is not irrational or arbitrary."); *Hunt v. Metro. Life Ins.* Co., 587 F. App'x 860, 862 (6th Cir. 2014) (finding that it was not unreasonable to require "objective medical evidence" even when the particular medical condition "resists objective diagnosis") (citing *Cooper*, 486 F.3d at 166).

The Estate also argues that given the absence of a death certificate, LINA's unwillingness to independently investigate the circumstantial evidence of Henning's death was arbitrary and capricious. Motion, DN 198 at PageID# 2882; Reply, DN 202 at PageID# 2954. The Estate points out that under ERISA, insurers must "provide a full and fair review of claim denials." Motion, DN 198 at PageID# 2882 (quoting *Metro. Life Ins. Co. v. Glenn*, 554 U.S. 105, 115 (2008)). The Estate argues that the two governmental investigative reports describing the accident should have been sufficient "to warrant at least opening an investigation, gathering evidence, and conducting interviews about Henning's death." Reply, DN 202 at PageID# 2954. The Estate contends that such an investigation would have "pointed LINA toward a conclusion that Henning was dead." *Id.*

However, because the Policy placed the burden of providing satisfactory proof on the insured, LINA was not obligated to investigate. *Miller v. Metro. Life Ins. Co.*, 925 F.2d 979, 984 (6th Cir. 1991) (finding that the insurer did not act arbitrarily or capriciously in declining to further investigate a claim when the claimant failed to provide "satisfactory proof" as required by the policy). As noted above, the Policy allocated the burden of submitting "proof of loss satisfactory to [LINA]" to the insured. Policy, DN 198-1 at PageID# 2907. Accordingly, LINA

11

was not obligated to further investigate the Estate's claim before the Estate met its burden of submitting a death certificate.

**2. LINA's Alleged Breaches of the Policy**

Next, the Estate argues that it should be awarded prejudgment interest because LINA breached several terms of the Policy, resulting in increased time and effort spent resolving the benefits claim. The Estate alleges three breaches: 1) LINA failed to send the Estate claim documents as required by the Policy; 2) LINA failed to provide Henning with a certificate of insurance as required by the Policy; and 3) LINA entered an illegal "paying agent agreement" with AMOP.[4] For the reasons discussed below, the Estate has not shown that prejudgment interest is warranted on these grounds.

The Estate first alleges that LINA breached the Policy by failing to provide claim documents to the Estate. Motion, DN 198 at PageID# 2884. The parties agree that while LINA received notice of Henning's death from AMOP on February 17, 2016, LINA never sent a claim form directly to the Estate. *Id*; Response, DN 201 at PageID# 2946-47. The Estate argues that this omission "compounded the failure of both AMOP and LINA to include the Estate in their email exchanges" between February 17 and April 12, 2016, the date on which AMOP returned the completed claim form to LINA. Motion, DN 198 at PageID# 2884.

The Estate has not shown entitlement to relief on this ground because it has not shown that the Policy required LINA to send a claim form directly to the Estate. The Policy states, "We send claim forms for filing proof of loss when We receive notice of claim." Policy, DN 198-1 at

---

[4] The Estate also faults LINA for "elect[ing] not to implead the death benefit amount into the supervision of the Court or to place the amount in an interest-bearimng [sic] escrow, when it could have done either at any point in this drawn-out saga." Motion, DN 198 at PageID# 2860. However, the Estate makes no attempt to explain why LINA was obligated to do so under either the Policy or ERISA. *Id.* Nor does it explain why the failure to do so would justify an award of prejudgment interest. *Id.* The Court will not address this undeveloped argument. *Fowler*, 819 F.3d at 309.

12

PageID# 2906. In its Response, LINA argues that it complied with this requirement. Response, DN 201 at PageID# 2946-47. LINA states that it received notice of the potential claim from the policyholder, AMOP, and that AMOP subsequently completed and returned the claim form LINA provided. *Id.* LINA maintains that it was not obligated to send a duplicate claim form to the Estate. *Id.* The Court agrees. Nothing in the Policy suggests that LINA must send claim forms directly to individual beneficiaries. *See* Policy, DN 198-1 at PageID# 2906. Notably, the Estate does not address LINA's argument in its Reply, nor does it explain why providing the claim form to AMOP, the policyholder, was insufficient.

Next, the Estate alleges that LINA breached the Policy by failing to provide Henning with a certificate of insurance. Motion, DN 198 at PageID# 2885. The Policy provides that "[w]here required by law, We will provide a certificate of insurance for delivery to the Covered person." Policy, DN 198-1 at PageID# 2910. The Estate contends that LINA's failure to provide Henning with a certificate later "gave rise to a lengthy dispute between the parties concerning whether Henning was properly a "Class 1" employee eligible for a $100,000 accidental death benefit or a "Class 3" employee eligible for a $200,000 benefit." Motion, DN 198 at PageID# 2885. However, the Estate's only basis for this argument is its assertion that "neither LINA nor AMOP has produced any such document . . . and no such document was in Henning's personal files acquired by the estate." Motion, DN 198 at PageID# 2885. The Estate provides no affidavit to support this assertion. Nor does the Estate offer any proof to foreclose alternative explanations for the certificate's absence such as Henning's simply losing or discarding the certificate prior to his death. Accordingly, Estate has not met its burden under Rule 56. *Celotex*, 477 U.S. at 323.

Finally, the Estate alleges that LINA breached the Policy by entering an illegal "paying agent agreement" with AMOP. Motion, DN 198 at PageID# 2885. According to the Estate, this

13

agreement impermissibly altered the contractual arrangement such that instead of paying the Estate directly, LINA would pay AMOP who would then distribute the benefits to the Estate. Motion, DN 198 at PageID# 2888. The Estate alleges that counsel for AMOP repeatedly referenced the existence of such an arrangement between 2021 and 2024. *Id.* at PageID# 2886-89. Most significantly, the Estate alleges that in a phone conference, counsel for AMOP stated that "on prior claims, LINA had issued the total benefit check to AMOP and left it up to AMOP to pay the heirs . . . that, in receiving the check, AMOP was acting as a 'Paying Agent' for the insurance company—and that there is a 'Paying Agent' agreement he was willing to send to Plaintiff's counsel." *Id.* at PageID# 2888. But when the Estate later requested that agreement, Counsel for AMOP responded by email that "such document is not one of those documents enumerated by Section 104(b)(2) of ERISA and is therefore not being produced to you." Email, DN 198-2 at PageID# 2919.

However, even if the Court assumes that LINA entered a "paying agent agreement" with AMOP, the Estate is not entitled to prejudgment interest because it has not shown how such an agreement delayed the payment of benefits. The parties agree that LINA always took the position that the benefits would be paid directly to the Estate. Response, DN 201 at PageID# 3947; Motion, DN 198 at PageID# 2886 ("When Plaintiff then asked counsel for LINA whether the LINA benefits were payable directly to Henning's estate or to AMOP, she said she thought they always are payable to the named beneficiary."). Further, the parties agree that LINA ultimately paid the benefits directly to the Estate less than three weeks after receiving the required death certificate. Motion, DN 198 at PageID# 2875; Response, DN 201 at PageID# 3938. The Estate does not contend that these three weeks constituted an unjustified delay. Thus, even if LINA breached the Policy as the Estate alleges, the Estate has not shown any resulting untoward delay

14

in payment such that an award of prejudgment interest would be justified. *Rybarczyk*, 235 F.3d at 985.

**B. The Estate is not entitled to attorneys' fees.**

The Estate also moves for attorneys' fees in conjunction with its claim for prejudgment interest under Count VIII of its amended complaint. Motion, DN 198 at PageID# 2857. Because the Estate has not shown any success on the merits of its claim for prejudgment interest, the Court will deny its motion for attorneys' fees.

Section 1132(g)(1) of ERISA provides that "[i]n any action under this subchapter . . . the court in its discretion may allow a reasonable attorney's fee and costs of action to either party." 29 U.S.C. § 1132(g)(1). While a party need not prevail to be awarded attorneys' fees under ERISA, the party "must show some degree of success on the merits." *Hardt v. Reliance Standard Life Ins. Co.*, 560 U.S. 242, 255 (2010) (citation omitted). In *Hardt*, the Supreme Court found that an award of attorneys' fees was appropriate when the district court remanded the plaintiff's claim for benefits to the administrator for further consideration. *Id.* The Court reasoned that while the plaintiff "failed to win summary judgment on her benefits claim," she achieved "some degree of success on the merits" by "persuad[ing] the District Court to find that the plan administrator ha[d] failed to comply with the ERISA guidelines and that [she] did not get the kind of review to which she was entitled under applicable law." *Id.* (internal quotation marks omitted).

Here, by contrast, the Estate has not shown any success on the merits of its claim for prejudgment interest. As discussed, the Estate has not shown any entitlement to an award of prejudgment interest. Nor has the Estate persuaded the Court that LINA failed to comply with

15

ERISA or that the Estate did not get the kind of review to which it was entitled. Accordingly, the Court will deny the Estate's motion for attorneys' fees.

**C. The Court is considering a *sua sponte* grant of summary judgment in favor of LINA.**

LINA did not file a cross-motion for summary judgment on the Estate's claims against it. However, the Court may grant summary judgment *sua sponte* for a nonmovant if the losing party had "notice and a reasonable time to respond . . . ." Fed. R. Civ. P. 56(f). The Court now provides the Estate notice that it is considering summary judgment in favor of LINA on all the Estate's claims. The Court will provide twenty-one days for simultaneous supplemental briefing on the issues, if desired.

A separate order and judgment will be entered this date in accordance with this Memorandum Opinion.

January 22, 2025

Charles R. Simpson III, Senior Judge
United States District Court