UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:18-CV-100-CRS

ROBERT C. WILLIAMSON
*in his capacity as Executor of the Estate of*
*Larry D. Henning*                                                                                         PLAINTIFF

v.

LIFE INSURANCE COMPANY OF
NORTH AMERICA, CIGNA[1]                                                                        DEFENDANT

## MEMORANDUM OPINION

Pursuant to Rule 56(f)(1) of the Federal Rules of Civil Procedure, Defendant Life Insurance Company of North America ("LINA") moves for summary judgment on Plaintiff's claim against it for prejudgment interest. Motion, DN 213. Plaintiff filed a response in opposition to LINA's motion, to which LINA replied. Response, DN 217; Reply, DN 220. For the reasons stated below, the Court will grant LINA's motion for summary judgment.

## BACKGROUND

On June 1, 2010, LINA issued an accidental death benefits policy ("the Policy") to American Maritime Officers Plans ("AMOP"), a group policyholder. Policy, DN 198-1 at PageID# 2892. Kentucky resident Larry D. Henning was eligible to receive accidental death benefits under the plan. Amended Claim Form, DN 180-26; Letter of Employment, DN 71-6 at PageID# 698.

In February of 2013, Henning and three others set off on a fishing vessel from Charleston, South Carolina. Coast Guard Report, DN 180-21 at PageID# 2436. On February 24, 2013, the U.S. Coast Guard discovered debris from Henning's vessel approximately 22 nautical miles east of Florida. *Id.* The Coast Guard and the Florida Fish and Wildlife Conservation Commission

---

[1] Life Insurance Company of North America is the sole remaining defendant. The Estate's claims against all other defendants have been settled or dismissed as moot. Order, DN 143; Order, DN 184.

("FFWCC") searched the area for three days before efforts were suspended. *Id.*; FFWCC Report, DN 180-21 at PageID# 2438. Henning was never found. *Id.* The FFWCC report of the investigation listed Henning's "injury status" as "missing." FFWCC Report, DN 180-21 at PageID# 2438. When Henning's Estate requested a Letter of Presumed Death from the Coast Guard, the Coast Guard responded that it was not authorized to issue one and that "Henning remains missing." Coast Guard Letter, DN 180-21 at PageID# 2436. The Coast Guard also provided its own report summarizing the investigation. Coast Guard Report, DN 162-1.

On August 12, 2014, Williamson was appointed curator for Henning's Estate. Complaint, DN 1 at PageID# 2. On September 23, 2014, the Estate informed AMOP that "Henning was lost at sea as a result of an apparent collision." Letter, DN 180-5. On October 2, 2015, the Estate sent AMOP the Coast Guard's and FFWCC's reports. Email, DN 180-7.

On October 10, 2015, Ana Maria Lunar, a Venezuelan native and Florida resident, called the Coast Guard and claimed to be Henning's widow. Amended Complaint, DN 71 at PageID# 627; *see* Coast Guard Letter, DN 71-6 at PageID# 665. On March 11, 2016, Lunar began calling Williamson to inquire about Henning's Estate. Amended Complaint, DN 71 at PageID# 628. Lunar claimed that she and Henning had married in Venezuela in 2012 and that she intended to claim Henning's accidental death benefits. *Id.*; Affidavit of Williamson, DN 71-6 at PageID# 695.

On March 17, 2016, the Estate emailed AMOP to claim "any life insurance benefits that may become payable to the estate." Email, DN 198-6 at PageID# 2925. On February 17, 2016, AMOP notified LINA that Henning "was in a fatal boating accident" and that AMOP would be filing a claim for his insurance benefits. Email, DN 198-5. On April 12, 2016, AMOP sent LINA a completed claim form as well as the Coast Guard and FFWCC reports. Claim Form, DN 180-10. On April 20, 2016, LINA notified the Estate that in order to process the claim, LINA required "[a] finalized death certificate . . . or other formal document indicating the death of Larry Henning."

2

First Letter, DN 180-12. LINA sent similar requests on May 13 and June 9, 2016, but the Estate did not respond. Second Letter, DN 180-13; Third Letter, DN 180-14. On July 1, 2016, LINA notified the Estate that the claim was closed but not denied. Final Letter, DN 180-17. LINA explained that the Estate could reopen the claim by "supply[ing] the requested information as described in our prior letters." *Id.*

On February 16, 2018, Williamson, in his capacity as Executor of the Estate, brought this civil action against LINA, AMOP, and Lunar. Complaint, DN 1. Count VIII of the Estate's complaint sought declaratory judgment "as to the proper beneficiary of [the LINA] benefits and whether and to what extent the beneficiary is owed statutory interest." Amended Complaint, DN 71 at PageID# 641.

On March 5, 2021, the Court issued an order declaring that "Larry D. Henning died on or about February 24, 2013, and he was a resident of Kentucky at the time of his death." Order, DN 131. On March 2, 2022, the Court issued another order specifying that "Larry D. Henning, a Kentucky Resident, died on February 24, 2013, as a result of the boating accident." Order, DN 148. The Florida Bureau of Vital Statistics subsequently issued a death certificate which the Estate submitted to LINA on March 11, 2022. Death Certificate, DN 180-3. LINA reviewed the Estate's claim and on March 30, 2022, it paid $200,000 directly to the Estate. Motion, DN 198 at PageID# 2875; Response, DN 201 at PageID# 2938.

This left the Estate's claim against LINA for prejudgment interest on those benefits. On March 1, 2024, the Estate moved for summary judgment on that claim. Motion, DN 198. On January 23, 2025, the Court denied the Estate's motion and informed the parties that it was considering granting summary judgment *sua sponte* in favor of LINA. Order, DN 208. The Court ordered simultaneous supplemental briefing on the issues. *Id.* On March 20, 2025, the Estate filed a supplemental brief in which it stated that it did not oppose the Court entering summary judgment

3

*sua sponte* in favor of LINA. Estate Supplemental Brief, DN 214. That same day, LINA filed the present motion for summary judgment on the issue of prejudgment interest. Motion, DN 213. On April 24, 2025, the Estate filed a response in which it opposed LINA's motion while maintaining that it did not oppose *sua sponte* summary judgment in favor of LINA. Response, DN 217.

## LEGAL STANDARD

The Court shall grant summary judgment if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant seeking summary judgment bears the initial burden of "informing the district court of the basis of its motion" and demonstrating "the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). The movant may satisfy that burden by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials . . . ." Fed. R. Civ. P. 56(c)(1). When considering a motion for summary judgment, the Court must view the facts and draw reasonable inferences in the light most favorable to the nonmoving party. *Scott v. Harris*, 550 U.S. 372, 378 (2007).

## DISCUSSION

LINA's Motion for Summary Judgment predominantly summarizes the Court's January 23, 2025 opinion denying summary judgment to the Estate. Motion, DN 213. In that opinion, the Court explained that an award of prejudgment interest should "compensate a beneficiary for the lost interest value of money wrongly withheld from him or her." Memorandum Opinion, DN 207 at PageID# 2978 (quoting *Rybarczyk v. TRW, Inc.*, 235 F.3d 975, 985 (6th Cir. 2000). Accordingly, the Court considered whether there was any wrongful delay in LINA's payment of Henning's accidental death benefits. It found none. First, the Court determined that the Policy granted LINA

discretion to determine what "proof of loss" was sufficient to proceed with the payment and that LINA's requirement of a death certificate was not an arbitrary or capricious exercise of that discretion. *Id.* at PageID# 2981. Second, the Court found no untoward delay caused by any of the other violations of the Policy alleged by the Estate. *Id.* at PageID# 2983. Relying on the Court's analysis of the undisputed facts, LINA contends that it is entitled to judgment as a matter of law on the issue of prejudgment interest. Motion, DN 213 at PageID# 2998.

In its response in opposition to LINA's motion, the Estate maintains that it does "not object to the Court *sua sponte* entering summary judgment for LINA predicated on the Court's January 23, 2025 factual findings, legal analysis and Order denying [its] Motion for Summary Judgment." Response, DN 217 at PageID# 3012. However, the Estate makes clear that this lack of objection is meant not as a waiver on the merits but rather as a procedural move to enable immediate pursuit of its claim on appeal. *Id.* Accordingly, despite its lack of objection to *sua sponte* summary judgment in favor of LINA, the Estate's response details several perceived deficiencies in the Court's January 23, 2025 opinion. *Id.* The Court will address those arguments here.

First, the Estate asserts that the Court was not directed to the correct "Coast Guard Report" in considering the Estate's motion for summary judgment. Response, DN 3027. Specifically, while the Court cited Captain Lutes' letter at DN 180-21 as the "Coast Guard Report," the Estate now clarifies that the actual report is found at DN 104-6 and DN 162-1. *Id.* at PageID# 3028. The Estate did not cite to either of these documents in any of its filings on its summary judgment motion. Regardless, this report adds nothing to change the Court's analysis. While the report paints a bleak picture of Henning's chances of survival, that grim prognosis was readily apparent from Captain Lutes' letter and the FFWCC report. And yet, as the Court explained in its January 23, 2025 opinion, both the Coast Guard and the FFWCC still refused to state that Henning was dead. Opinion, DN 207 at PageID# 2981. This hesitance by the investigative agencies, along with the

5

specter of fraud raised by the intervention of alleged widow Ana Maria Lunar, gave LINA a reasonable explanation for requiring the more objective proof of a death certificate. *Id.*

Second, the Estate argues that the Court's March 5, 2021 order declaring that Henning was dead was sufficient to obligate LINA to disburse the death benefits. Response, DN 3013. However, as the Estate concedes, that order "did not address the specific place or manner of [Henning's] death . . . ." *Id.* at 3014. More importantly, as discussed, it was not unreasonable for LINA to wait for confirmation of death from the state or agencies that investigated Henning's disappearance. Accordingly, LINA did not wrongly withhold the benefits after the Court's March 5, 2021 order and no prejudgment interest is owed as a result.

The Estate offers nothing else in its response that has not previously been considered and addressed by the Court. As the Court explained in its January 23, 2025 opinion, the Estate has presented nothing on which it could be found that LINA wrongly delayed payment of the accidental death benefits. Accordingly, the Court finds that in light of the undisputed facts, there is no genuine issue for trial and LINA is entitled to judgment as a matter of law on the Estate's claim for prejudgment interest. The Court will therefore grant LINA's Motion for Summary Judgment.

A separate order and judgment will be entered this date in accordance with this Memorandum Opinion.

August 7, 2025



Charles R. Simpson III, Senior Judge
United States District Court